## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>RICKY D. LINDSEY, )<br>)<br>Defendant. )<br>) | Criminal No. 08-034 (RCL) |

## MEMORANDUM OPINION

### I.   INTRODUCTION

Now before the Court is the defendant's motion [18] to suppress tangible evidence. The defendant's motion to suppress his statement was already granted during the motions hearing. Upon consideration of the motion, the supplement [22], the opposition [28], and the arguments and evidence introduced at the December 2, 2008 motions hearing, the defendant's motion will be GRANTED and the evidence obtained by the government during the February 14, 2008 search will be suppressed.

### II.   FACTUAL BACKGROUND

Sometime in 2006, the Metropolitan Police Department ("MPD") obtained photographs in connection with a child abuse proceeding. The photographs depict an adult placing a Glock pistol and a Tec-9 type assault pistol in a small child's hands, a child of perhaps one or two years

1

old. An MPD firearms expert concluded that the guns in the photographs were real. One

photograph also shows the child chewing on a roll of money. The MPD determined that the

adult in the picture was Timothy Johnson and also noted that the photographs show a blue couch

and blue wall in the background. The MPD also determined that Timothy Johnson, the adult in

the picture, was the child's father. As a result of the photographs and other information, the

MPD executed a warrant at the known residence of Timothy Johnson on August 24, 2006. The

detectives recovered an SKS Assault Rifle and a box of .45 caliber ammunition, but did not

recover the Glock pistol or Tec-9 assault weapon.

Sometime after the August 24, 2006 search, Detective Knight with the MPD took over

the case. She interviewed the mother of the child in the photographs, who told her that she

believed the photographs were taken in January or February of 2006. The mother of the child

also stated that she believed the photographs were taken at the residence of Ricky Lindsey. On

August 9, 2007, Detective Knight went to Ricky Lindsey's residence at 4645 A Street S.E., to

determine whether his residence was the one shown in the photographs. She entered with

consent and determined that the couch and wall resembled the couch and wall in the

photographs. Accordingly, she spoke with Assistant United States Attorney Rubenstein, who

declined to give his approval for her to apply for a search warrant for the residence of Ricky

Lindsey. Detective Knight testified at the motions hearing that the reason AUSA Rubenstein told

her not to apply for a search warrant was because by August 2007 Timothy Johnson, the

individual shown possessing the firearms in the photographs, had already been arrested for

another crime. On cross-examination, Detective Knight also acknowledged that Assistant United

States Attorneys Connor and Higashi told her that it would not be possible to get a warrant

2

because too much time had passed since the photographs had been taken.

Meanwhile, the FBI had been conducting a separate, parallel investigation of Timothy Johnson. On November 29, 2007, Special Agent Sparks with the FBI had executed a search warrant on another known residence of Timothy Johnson at 4511 B Street, S.E., #101. That search recovered over 100 grams of PCP, over a pound of marijuana, crack cocaine, 24 grams of heroin, a .380 caliber pistol, .45 caliber ammunition, and body armor. Johnson was taken into custody at that time. However, the Glock pistol and Tec-9 pistol that were in the photographs were not recovered.

At some point following the November 29, 2007 search, Special Agent Sparks learned of the parallel investigation of Timothy Johnson that the MPD had conducted. He also learned about the photographs of Johnson and the child and the visit that the MPD had made to Lindsey's residence in August 2007 to determine that the couch and wall in Lindsey's house matched the house and wall in the photographs. He knew that the guns in the photographs had not yet been recovered and that the photographs were probably taken at the residence of Ricky Lindsey. On February 7, 2008, therefore, he decided to apply for a search warrant of 4645 A Street S.E. His affidavit in support of the warrant included most of the relevant facts regarding the MPD's investigation but omitted the date when the photographs depicting illegal weapons in Lindsey's home were taken. Agent Sparks testified at the motions hearing that he did not speak with Detective Knight from the MPD about her investigation, but he apparently learned of many of the details of the previous investigation from AUSAs Rubenstein and Jackson, who ultimately reviewed and approved his affidavit. The magistrate judge issued a search warrant on the basis of Sparks' affidavit. During the ensuing search of 4645 A Street, S.E., the FBI recovered a 9mm

3

UZI sub-machine gun and 625 grams of powder cocaine from Lindsey's bedroom.  Lindsey was

indicted and moved to suppress the evidence.

## III.   ANALYSIS

This case essentially presents two issues: (1) did the search warrant for Lindsey's

residence issue upon probable cause?; and (2) if it did not, did the officers gather evidence in

objectively reasonable reliance on the warrant?

### A.   There was not Probable Cause to Issue the Search Warrant because the Evidence was Stale

The Fourth Amendment to the United States Constitution states: "The right of the people

to be secure in their persons, houses, papers, and effects, against unreasonable searches and

seizures, shall not be violated, and no Warrants shall issue, but upon probable cause . . . ."  When

evidence is obtained in violation of the Fourth Amendment, the prosecution is barred from using

that evidence in its case-in-chief by operation of the exclusionary rule.[1]  *See e.g.*, *United States v.*

*Dawkins*, 17 F.3d 399, 407–408 (D.C. Cir. 1994).

To determine whether or not a warrant issued upon probable cause, a court must consider

the "totality of the circumstances" and give "great deference" to the magistrate.  *Illinois v. Gates*,

462 U.S. 213, 236 (1983).  However, the D.C. Circuit has made clear that stale evidence does not

provide the type of evidence that is sufficient to establish probable cause for issuing a warrant.

The D.C. Circuit visited the question of staleness in *United States v. Webb*, 255 F.3d 890

---

[1]The exclusionary rule is subject to exception when the "deterrence benefits" of the
exclusionary rule do not "outweigh its substantial social costs."  *Hudson v. Michigan*, 546 U.S.
586, 592 (2006).  *See also Herring v. United States*, 129 S. Ct. 695, 700 (2009).

4

(D.C. Cir. 2001). In that case, a government informant engaged in a drug transaction in Webb's apartment. *Id.* at 904. However, the warrant did not issue until 109 days later. Although the D.C. Circuit eventually affirmed the trial court's denial of the motion to suppress on *Leon* good faith grounds, it engaged in a discussion of "staleness." The Circuit stated that it found the "issuance of this warrant troubling." *Id.* It also approvingly cited a previous case in which the Circuit found no probable cause to issue a search warrant when documents were last seen in a residence 107 days before the search warrant was issued. *Id.* Finally, the Circuit noted that "Courts have been considerably more lenient in assessing the currency of information supporting probable cause in the context of extended conspiracies than in the context of single-incident crimes." *Id.* at 905.

On the basis of that law, the warrant here did not issue upon probable cause. Even if the Court reads the affidavit as if the photographs that gave rise to the warrant were taken on August 9, 2007,[2] the search warrant was not issued until approximately 178 days after this date. Not only is this much longer than the 109 days in *Webb*, but this case involves a "single-incident crime,"[3] which the Circuit has suggested it will not be lenient about with regard to staleness. Because the photographs were the only evidence of criminal activity that was linked to the defendant or his residence, and those photographs were stale, the warrant did not issue upon probable cause in this

_____

[2]This was the date that Detective Knight with the MPD visited Ricky Lindsey's home to determine whether the photographs were taken within Lindsey's home. Therefore, the magistrate judge may have assumed that the photographs were taken shortly before that date. The affidavit, however, did not state when the photographs were taken—and the Court learned during the motions hearing that they were taken in early 2006.

[3]The photographs show the possession of illegal firearms in Lindsey's home. Possession of an illegal firearm is generally considered a single-incident crime. *See United States v. Hopkins*, 128 F. Supp. 2d 1, 7–8 (D.D.C. 2000) (Lamberth, J.).

case.

**B.     The *Leon* Exception is Inapplicable**

Nevertheless, the "exclusionary rule was adopted to deter unlawful searches by police,

not to punish the errors of magistrates and judges." *Massachusetts v. Sheppard*, 468 U.S. 981,

990 (1984).  As a result, so long as the officer gathered evidence in objectively reasonable

reliance on a search warrant, the exclusionary rule does not apply.  *United States v. Leon*, 468

U.S. 897, 922 (1984).

Of course, there are a few exceptions to the *Leon* principle, two of which are implicated

in the present case.  First, suppression is an "appropriate remedy if the magistrate or judge in

issuing a warrant was misled by information in an affidavit that the affiant knew was false or

would have known was false except for his reckless disregard of the truth." *Leon*, 468 U.S. at

923. This exception has also been held to apply to material omissions.  *United States v. Spencer*,

530 F.3d 1003, 1007 (D.C. Cir. 2008).  Second, suppression is appropriate if the warrant was "so

lacking in the indicia of probable cause as to render official belief in its existence entirely

unreasonable." *Leon*, 468 U.S. at 923.

**1.     Defendant Did Not Meet His Burden of Showing that the Magistrate
was Intentionally Misled**

The standard by which to analyze the first exception to *Leon* was discussed in *Franks v.*

*Delaware*, 538 U.S. 152, 170 (1978).  In that case, the Supreme Court said that to avail himself

of this exception, the defendant must "point out specifically the portion of the warrant affidavit

that is claimed to be false," and the defendant must establish "deliberate falsity or reckless

disregard of the truth . . . allegations of negligence or innocent mistake are insufficient." *Id.* The

6

defendant must establish his allegations by a preponderance of the evidence. *Id.* at 156.

In this case, while the defendant certainly raised the specter of impropriety, he failed to meet his burden of demonstrating "deliberate falsity or reckless disregard of the truth." Certainly, the affidavit is misleading. The affidavit does not disclose the date that the critical photographs were taken, but it reads as if they were taken shortly before August 9, 2007. In actuality, the photographs were taken in early 2006. However, the defendant did not establish why the date was left out of the affidavit, let alone establish the "deliberate falsity" required by *Leon*. Counsel for the government stated that the date "should have been included"; however, that gives no insight into whether the date was left out as a result of a mistake or an intentional choice. The Assistant United States Attorneys who relayed the information about the MPD's parallel investigation of Timothy Johnson to Sparks may not have told him how old the photographs were. The lack of any evidence as to the deliberate falsity of the affidavit, combined with the fact that defendant's counsel did not even argue *Franks* during the hearing means that the defendant fell short of his burden under *Franks* to invalidate a warrant.[4] *See United States v. Gaston*, 357 F.3d 77, 81 (D.C. Cir. 2004) (stating that defendants offered no reason to believe that the ATF agent knew that information about defendant's previous convictions included in the affidavit were false. The defendants never "formally moved for an evidentiary hearing under *Franks*, or even attempted to make the sort of showing that would have entitled them to one").

---

[4] One circuit has suggested that it will make an inference of recklessness if the material omitted from a search warrant affidavit is "clearly critical" to the finding of probable cause. *United States v. Martin*, 615 F.2d 318, 329 (5th Cir. 1980). *But see United States v. Colkley*, 899 F.2d 297, 301 (4th Cir. 1990) (expressing disapproval of the "clearly critical" approach because the *Franks* inquiry has two components—intentionality and materiality). The D.C. Circuit has not yet weighed in on whether a court can make an inference of recklessness if an affiant omits material that is "clearly critical" to the finding of probable cause.

## 2.     The Affidavit was so Lacking in Probable Cause as to Render Reliance on it Unreasonable

The final issue that must be addressed is whether *Leon* does not apply because the search

warrant that was issued in this case was "so lacking in indicia of probable cause as to render

official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923. A mistake is

obvious if "a reasonably well trained officer would have known that the search was illegal in

light of all of the circumstances." *Herring v. United States*, 129 S. Ct. 695, 703 (2009) (citing

*Leon*, 468 U.S. at 922, n.23).

In *Leon*, the key piece of evidence that was used to obtain a search warrant for Leon's

residence was an informant's tip that he had seen drugs in the residence. *Id.* at 901. However,

the tip was five months old. Nonetheless, the magistrate judge issued a search warrant for Leon's

residence and the officers discovered contraband in the ensuing search. *Id.* at 902. The Supreme

Court assumed that the warrant did not issue upon probable cause but still held that the evidence

obtained in the search should not be excluded because the police obtained evidence in objectively

reasonable reliance on the warrant. *Id.* at 906.

This case is similar in that the key piece of evidence—the photographs in Lindsey's

residence—were stale. The magistrate approved a search warrant based on the stale evidence,

and incriminating evidence was uncovered in the ensuing search. However, *Leon* is also

different in some important ways. First, in *Leon,* the officers' affidavit contained a statement

from an informant in which he stated that he saw drugs in the residence five months before the

execution of the search. In this case, the affidavit does not actually state when the criminal

activity was observed (*i.e.*, when the photographs were taken); it only states that the couch and

8

wall in Lindsey's home appeared to match the photographs when the MPD visited Lindsey's home 6 months prior to the search. Moreover, in *Leon*, the officers had supplemented their informant's statement with numerous observations. Although the informant observed drugs five months prior to the search, the corroborating evidence was much more recent (less than a month old). In this case, the corroborating evidence (the fact that the couch and wall matched the photographs) was obtained six months before the search; the date that the photographs were taken was approximately two years earlier—this fact was not disclosed in the affidavit. Finally, *Leon* involved a drug conspiracy; as discussed below, courts have been less lenient with regard to staleness when dealing with observation of a single-incident crime such as illegal possession of a weapon.

These differences lead the Court to conclude that in contrast to the officers in *Leon*, an objectively reasonable officer could not have relied on the warrant in this case. The first problem that should have alerted the officers that probable cause did not exist is that the affidavit in support of the warrant did not include a date for when the critical evidence was gathered. *See United States v. Huggins*, 733 F. Supp. 445, 447–48 (D.D.C. 1990) (Revercomb, J.) (suppressing evidence when affidavit in support of search warrant failed to state the time and date of the critical controlled purchase because there was no way for a judicial officer to determine whether the information was stale). The second fact that should have alerted an objectively reasonable officer that probable cause did not exist is the fact that the police were searching for firearms—extremely portable objects—that were in the defendant's residence[5] approximately

---

[5]There was no evidence that Lindsey ever possessed the firearms depicted in the photographs—the photographs show only the child and Timothy Johnson.

9

two years before the search was executed.[6] *See United States v. Johnson*, 332 F. Supp. 2d 35, 39

(D.D.C. 2004) (Friedman, J.) (suppressing evidence despite the magistrate's approval of the

search warrant because there was no explanation for why the officers would "believe[] they

would find [defendant's] gun or other evidence incriminating [defendant] at that residence nearly

four weeks after the July 12 evidence and even longer after there was any evidence of [the

defendant's] connection to the address in question"); *United States v. Hopkins*, 128 F. Supp. 2d

1, 7 (D.D.C. 2000) (Lamberth, J.) (stating that "[w]hile drug dealers usually require a place to

store their inventory, gun owners can (and often do) carry their entire artillery—often a single

pistol—with them at any time.  People who have a gun rarely need to make repeated purchases of

a gun, and rarely run a gun distribution network out of their home").

As a result, this case is much different from *United States v. Webb*, 255 F.3d 890, 905

(D.C. Cir. 2001), in which the D.C. Circuit upheld a search on *Leon* good faith grounds despite

its suggestion that the critical three month old evidence was stale.  In that case, "it would not

necessarily have been unreasonable for an officer to conclude that a longtime drug dealer, whose

most recent known deal had occurred three months earlier, would still retain papers permitting

him to get back in touch with his customers or . . . his supplier."[7]  This case, however, is more

like *Schoeneman v. United States*, 317 F.2d 173 (D.C. Cir. 1963), a pre-*Leon* case that was cited

approvingly by the D.C. Circuit in *Webb*.  In that case, the evidence "consisted solely of an

---

[6]Agent Sparks, the affiant, may not have been aware of precisely how old the photographs were.  However, he knew they were at least six months old because his affidavit mentions the MPD's August 2007 entry into Lindsey's residence based on the photographs.

[7]Of course, this case is also different in that the date that the critical evidence was gathered was not included in the affidavit.  Also, the evidence used in support of the search warrant in this case was much staler than that in *Webb*.

10

informant's statement that he had seen classified documents in the defendant's home on [a] single occasion," approximately three months before the search was executed. *Webb*, 255 F.3d at 905. Accordingly, the Circuit in *Schoeneman* suppressed the evidence because the magistrate should not rely on affidavits which "have sole relation to a different time." *Schoeneman*, 317 F.2d at 177 (citing *Sgro v. United States*, 287 U.S. 206, 211 (1932)).

The Court also notes that agent Sparks, the affiant, has extensive law enforcement knowledge and experience, which is a factor to be taken into account when determining whether an officer would know if a search was illegal despite the magistrate's authorization. *Herring v. United States*, 129 S. Ct. 695, 703 (2009). As noted in his materials supporting the search warrant application, Agent Sparks has been employed with the FBI since 1990 and has been the lead case agent investigating several long-term, gang-related enterprises. Indeed, this Court has had the opportunity to observe Agent Sparks' generally exceptional work. However, under the Supreme Court's 'objective' test that takes into account an officer's knowledge and experience, the fact that Agent Sparks is a well-trained and exceptional agent also weighs toward the conclusion that he should have known that the search was illegal despite the magistrate's authorization.

The totality of the circumstances lead the Court to conclude that the warrant was so lacking in the indicia of probable cause that an objectively reasonable officer should not have relied on it.[8] The critical evidence used in support of the search warrant was gathered

---

[8] Sparks does not shoulder all the blame for the affidavit that was submitted in this case. It is unclear why the Assistant United States Attorneys approved his affidavit. The attorneys were aware of the MPD investigation and knew how old the photographs were. The photographs were stale under law established in this Circuit at the time. *See supra*. In addition, a couple of the Assistant United States Attorneys had already advised the MPD not to apply for a warrant

approximately two years before the search, the affidavit did not include the date when the critical evidence was gathered, the affidavit purported to support a search for a gun—a portable object—long after the gun was observed in the photograph, and the defendant was never actually observed with the gun. The *Leon* good-faith exception is inapplicable in this case.

VI.    **CONCLUSION**

There was not probable cause to issue a warrant for the residence of Ricky Lindsey because the evidence used to obtain the warrant was stale. The *Leon* good-faith exception is inapplicable because the warrant was lacking in the indicia of probable cause such that an objectively reasonable officer should not have relied on it. It is therefore

ORDERED that the defendant's motion to suppress tangible evidence [18] obtained during the February 14, 2008 search will be GRANTED.

A separate order shall issue this date.

SO ORDERED.


_____          _____
Chief Judge Royce C. Lamberth            Date

_____

based on the same underlying facts because the man shown in the photographs had already been arrested for another crime and because too much time had passed since the photographs were taken. At the very least, the Court agrees with the government's statement at the motions hearing that the Assistant United States Attorneys should have ensured that the date that the critical evidence was gathered was included in Sparks' affidavit before approving it for submission to the magistrate.

12